**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
299 BROADWAY
SUITE 1700
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
175 MAIN STREET
SUITE 800
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (914) 761-0995

February 17, 2021

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, NY 10601

BY ECF AND EMAIL/PDF

Re: *United States v. Frank Nesbitt*, **19 Cr. 245 (KMK)**
**Defense Sentencing Letter**

Dear Judge Karas:

I submit this sentencing letter on behalf of Frank Nesbitt, who is scheduled to be sentenced by this Court on Wednesday, March 3, 2021 at 2:00 pm for his plea of guilty to a single count Superseding Information which charged him with conspiracy to distribute a quantity of marijuana, pursuant to 21 U.S.C. 841 (b)(1)(D).

For the reasons set forth in this letter, the defendant respectfully requests that the Court impose a below-guidelines range sentence of time served to be followed two years' Supervised Release, which would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)

### Case Background, The Plea Agreement, Probation PSR and Objections

On April 11, 2019, Mr. Nesbitt was arrested along with 4 co-defendants and originally charged with involvement in a conspiracy to distribute cocaine and crack cocaine pursuant to 21 U.S.C. 841 (b)(1)(A). He was arraigned before the Honorable Paul E. Davison the same day, entered a plea of not guilty and was detained on consent. A Medical Order was entered for treatment of the defendant's condition of ▇▇▇▇. (ECF Doc No. 12). On April 15, 2019, a Bail Hearing was held before the Honorable Lisa Margaret Smith and the defendant was granted pretrial release with a $100,000 unsecured personal recognizance bond co-signed by two financially responsible persons and regular pretrial supervision. Mr. Nesbitt was then released on his own signature and timely complied with the surety condition. (ECF Doc Nos. 13, 14, 15). He

1

has been in full compliance with all conditions of his pretrial release throughout the pendency of this case. (PSR ¶10). After my exhaustive review of voluminous discovery and extensive negotiations with the Government, which included Mr. Nesbitt's proffer that his role in this case was limited to possession and distribution of marijuana, the Government offered the defendant a plea reflecting that conduct. On October 26, 2020, the defendant pleaded guilty before the Honorable Judith C. McCarthy pursuant to a Plea Agreement dated October 13, 2020, to a single count Superseding Information, Conspiracy to possess and distribute marijuana, pursuant to 21 U.S.C 841(b)(1)(D). In the Agreement, the parties stipulated to a base offense level of 14 and a 2-level reduction for acceptance of responsibility, for a total offense level of 12. With a Criminal History Category II, the defendant's Guidelines Range is 12-18 months' imprisonment.

The Probation Final Presentence Report ("PSR") was received on January 15, 2021 and recommends a below-guidelines range sentence of time served (four days) to be followed by three years' Supervised Release to also include six months' home confinement with location monitoring (PSR, Addendum, pp. 16-17). While I wholeheartedly agree with Probation that a non-custodial sentence is clearly appropriate in this case (especially in light of Mr. Nesbitt's underlying medical conditions), I submit that their recommended period of three years' Supervised Release is greater than necessary to achieve the goals mandated by 18 U.S.C. §3553(a). Any term of home confinement with location monitoring is a waste of resources, completely unnecessary and would frustrate those goals. Given the defendant's personal history, steady employment history, the remoteness of the instant case from his prior non-violent criminal conduct and his ongoing service to youth in the community, the defense recommended sentence of time served with two years' Supervised Release would be sufficient but no greater than necessary.

## Family History

The defense concurs with the details of Mr. Nesbitt's personal and family data as outlined by Probation (PSR ¶¶41-51), but take exception to the chronology of the defendant's employment history (PSR ¶¶60-64) as detailed herein. Frank Nesbitt, 46 years old, was born on August 27, 1974 in Poughkeepsie, New York to his parents Evelyn Baker Nesbitt, 72 years old and Elijah Nesbitt who passed away in 2007 from a heart attack. He had a good relationship with both parents, especially his mother who is a retired home health aide. His father has a criminal and substance abuse history and his mother suffers from mental health issues. Frank had a happy childhood but visited with his father sporadically after his parents divorced when he was 17 years old. He moved out of his mother's home at 24 years old and has lived in Poughkeepsie his whole life. He is the father of several children. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ from a prior relationship with Hoohe Atkinson. ▇▇▇▇ lives with his mother and attends community college. ▇▇▇▇▇ lives with his maternal grandmother and attends high school in Poughkeepsie. Mr. Nesbitt has a close relationship with both boys. He has three children from a prior relationship with Michele Henderson, who is currently incarcerated for a gun offense. Ms. Henderson also has a substance abuse and mental health history which caused her to lose custody of the children in 2007. As a result, Mr. Nesbitt took custody of their children: ▇▇▇, ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; ▇▇▇▇, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇. Frank even agreed to take custody of Ms. Henderson's son from a previous relationship, ▇▇▇▇▇▇▇▇, ▇▇▇▇▇▇▇▇, who would have otherwise been placed in foster care.

Residing at the same address for the last 14 years, he lives and provides for ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Frank has a current romantic relationship with Dominique Williams since 2013 and they have a child together, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, who lives with Dominique, as well as ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dominique's son from a prior relationship.

## Education, Employment, Health and Criminal History

As confirmed in the PSR Frank graduated from Poughkeepsie High School in 1993 (¶58) and attended one semester at Dutchess Community College. Contrary to the PSR (¶63), the defendant has never been unemployed for any extended period since his release from prison on parole in 2005 and certainly not from 2014 to 2016. In fact, as stated in the report, while not always employed full time, he maintained seasonal employment with the City of Poughkeepsie from 2007 through 2016 as a youth counselor while also maintaining full time employment with Family Partnership as a youth counselor in 2013 and with Boys and Girls Club, as youth summer program supervisor, from 2017 until his arrest for this case. He continues to be employed as a youth counselor with Family Partnership in Poughkeepsie, New York. As documented by the letters in support attached hereto, Frank has the deep respect of his peers for his dedication to youth in the community, especially during these terrible times of the pandemic and rising crime. Two of those letters, from colleagues at Family Services attest to Frank's "major positive influence on the highest risk youth (ages 14-22) in our community [in] join[ing] our outreach workers in the streets to help defuse potentially violent situations…always and available to help when we call, no matter what time of day. Our organization has seen his passion …and dedication to change the norms amongst the youth in the community." Maurice Gary, President of the City of Poughkeepsie American Youth Football Cheer, writes that he knows Frank for many years as "a coach mentor and father figure to my own children as well as countless other children in the City of Poughkeepsie… I have seen him pay for uniforms, sneakers, cleats, food and anything needed to ensure the kid on his teams are comfortable while playing. Tim McQueen, who knows Mr. Nesbitt for over 35 years, lauds him for his dedication to his autistic son while continuing to be 'an integral part of the community" and an "inspiration for single fathers…". Debra Long, Adjunct Professor at Dutchess Community College and program manager for SNUG, targeting youth with gang affiliation or at risk for affiliation, writes that, in working with and referring such youth to Frank for his intervention, she has always known him as "a consummate professional…creative, flexible, caring and sensitive... Youth take to him, instantly and, in a matter of weeks, he establish[es] a rapport with them that [make] him a part of their support network at school and home…In short, Frank is a natural at making himself part of the fabric."

At 46 years old, Mr. Nesbitt has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and has been prescribed medications for these conditions. He is also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These underlying conditions[2] would create a substantial risk to him of serious illness or death if he were to contract

---

[1] https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html


Covid-19, which is more likely in the limited social distancing environment of prison. He has a substance abuse history which began at 18 years old when he started smoking marijuana, which progressed to daily use by 25 years old. He has never used any other illegal drugs or ever attended a drug treatment program. He has no mental health history. (PSR ¶¶55-57).

The defendant's remote-in-time criminal history is entirely non-violent involving the attempted sale or possession of illegal drugs while he was in his 20's. His conduct in the instant case occurred approximately 14 years after his prior New York State conviction for narcotics possession in 2004 and 9 years after his successful discharge from parole in that case.

## Sentencing Considerations

Probation recommends that the defendant receive a sentence of three years' probation and six months' home confinement with location monitoring. While I concur with Probation, that a non-custodial sentence is appropriate, I respectfully request that the Court impose a sentence of time served to be followed by two years' Supervised Release.

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." Id. As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). That appropriate sentence may be outside the guidelines range as long as the "justification is sufficiently compelling to support the degree of the variance." *Gall*, at 50.

In *United States v. Booker*, 543 US 220 (2005), the Court held that the district court has the duty to consider the recommended guideline range along with the other factors listed in 18 USC §3553(a). It is therefore respectfully requested that the Court consider, along with the United States Sentencing Guidelines, the following factors and analysis:

### 18 U.S.C. § 3553(a) FACTORS

1. The nature and circumstances of the offense and the history and characteristics of the defendant.

   a) The nature and circumstances of the offense

   The defendant was originally charged as a co-conspirator in a narcotics conspiracy from 2016 to 2019 which distributed large quantities of cocaine and crack cocaine. Upon further investigation, it was apparent that his participation was limited to purchasing marijuana ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in quantities ranging from a couple of ounces to

4

        a quarter pound from 2017 until October 2018. Frank would sometimes sell the marijuana he purchased ▮▮▮▮ to other dealers. (PSR ¶¶15-16). While not minimizing the seriousness of the defendant's conduct, he was not involved in possessing and distributing cocaine and crack cocaine and his conduct was more limited in time. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        Finally, this was strictly a non-violent offense with no allegations of any injuries, threats or weapons involved.

    b)    The history and characteristics of the defendant.

        The defendant's personal history and characteristics are well-documented by the PSR as well as by the additional details contained in this submission and the letters in support attached hereto. This case represents his first arrest in 14 years and he has a long history of gainful employment and dedication to the youth of Poughkeepsie. His prior contacts with the criminal justice system actually aid him with "street cred" as a youth outreach counselor in being able to connect with children vulnerable to gang affiliation. He is the sole provider for three children who live with him, including his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Frank accepts full responsibility for his actions (PSR ¶21) and in lieu of letter, he has requested to address the Court at sentence.

        On a personal note, it has been a pleasure to work with Frank for the past almost two years. He is a respectful, soft spoken and nice man who always promptly responded to any request I made of him. He was totally cooperative with me in all aspects of his case.

2.    The need for the sentence imposed and afford adequate deterrence

To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

        The defendant has expressed to me deep remorse for his conduct on numerous occasions, especially on the impact this could have on his children. I respectfully submit that the defense requested sentence is a sufficient sentence. Probation's recommended sentence of three years' Supervised Release would be excessive, unnecessary and quite frankly, would constitute a waste of Probation's resources. Six months' home detention would be unduly harsh, and serving no other purpose than to be purely punitive. The defendant has complied with all conditions of his release, and has remained employed throughout the almost two years' duration of this case. Home confinement would interfere with the defendant's ability to work as an outreach youth counselor which frequently requires response to crises calls in the community at all times of the day and night. Home confinement is certainly not necessary for safety of the community for protection from the defendant, who has never committed a violent offense and who has no recent prior criminal history. Finally, sentencing the defendant to prison, beside it being grossly greater than

5

necessary, would pose a significant risk to his life with his multiple underlying health conditions of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ should he contract Covid-19, which is much more likely in a prison environment. Indeed, as the court is keenly aware, motions for compassionate release from prison pursuant to 18 U.S.C. 3582 have flooded federal courts around the country and have been granted due to the "extraordinary and compelling" circumstances of these same underlying medical conditions.[3]

The defense requested sentence will also satisfy both specific and general deterrence. As Probation stated "since his last term of imprisonment, the defendant has taken on new responsibilities of being the primary caretaker to his children. We hope that Nesbitt has now realized that he must make positive changes in his life and lead a law-abiding life for himself and his children." (PSR, Addendum p. 17). I submit that Mr. Nesbitt does keenly understand that if he commits another offense that he will go to prison and there will be nobody to take care of his children. What better deterrent is there than that? A harsher sentence is not necessary to hammer that fact home. As for general deterrence, the imposition of Supervised Release for a period of years for the instant offense of possession and distribution of marijuana will surely serve the purpose in warning others who would think about committing a similar crime.

## CONCLUSION

In light of Mr. Nesbitt's personal background, age, health, employment history, remote and non-violent criminal history, close ties and service to the youth of his community, personal character as evidenced by the letters of support and of his limited conduct in this case, I respectfully submit that justice would be served by the imposition of the defense requested sentence of time served to be followed with two years' Supervised Release, which would demonstrate leniency, yet also fulfill all the goals pursuant to 18 U.S.C. § 3553(a).

Very truly yours,

Tanner & Ortega, L.L.P.

Howard E. Tanner

cc: AUSA Samuel Raymond (By ECF)

---

[3] Courts have routinely found defendants with similar conditions meet this "extraordinary and compelling reason" threshold. See, e.g., *United States v. Gonzalez*, No. 3:19-CR-00090 (VAB), 2020 WL 7024905, at *4 (D. Conn. Nov. 30, 2020) ("obesity, taken alone, may constitute an extraordinary and compelling reason for release"); *United States v. Rodriguez*, No. 00 CR. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("obesity and Type II diabetes constitute an extraordinary and compelling reason to modify his sentence"); *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (hypertension and diabetes constituted extraordinary and compelling reasons justifying release).